**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**November 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CARLOS ANTONIO AGUIRRE-
AVENDANO,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 22-9501
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Carlos Antonio Aguirre-Avendano is a native and citizen of El Salvador who

entered the United States without permission.  An immigration judge (IJ) found him

removable and ineligible for asylum, withholding of removal, or protection under the

Convention Against Torture (CAT), and ordered that he be returned to his home

country.  The Board of Immigration Appeals (BIA) dismissed his appeal in a single-

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

member order.  Aguirre-Avendano now petitions for review of the BIA's decision.

We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

## I.    STANDARD OF REVIEW

We review the BIA's decision, but we may consult the IJ's more-complete discussion of the same grounds relied upon by the BIA.  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  "[W]e will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance."  *Id.* "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

## II.    BACKGROUND & PROCEDURAL HISTORY

Aguirre-Avendano entered the United States at an unknown location in 2006. In November 2010, the government charged him with removability as a noncitizen present in the United States without being admitted or paroled.[1]  Aguirre-Avendano conceded the charge and applied for asylum, withholding of removal, and CAT protection.  He claimed he was being persecuted by the MS-13 gang because he refused to join them.

Aguirre-Avendano and his sister (who came to the United States before him) testified at his asylum hearing in 2011 about the violence they suffered at gang members' hands, and about their mother's murder for resisting gang activity.  The IJ's eventual decision credited that testimony but held that those who resist gang

___

[1] The government charged a second basis for removability, arising from a criminal conviction, but it has since abandoned that charge.

activity or recruitment are not a social group entitled to asylum. The IJ also ruled that the Salvadoran government was not acquiescent to gang violence, so CAT protection was inapplicable.

Aguirre-Avendano appealed to the BIA, which affirmed, and he then petitioned this court for review. After briefing, the government moved to remand the case so the agency could re-examine Aguirre-Avendano's asylum claim from a different perspective, namely, whether he was being persecuted on account of membership in a social group comprising his family. We granted that motion, leading to further proceedings before the agency in which Aguirre-Avendano claimed persecution based on membership in his nuclear family alone, or membership in a nuclear family that had made police reports against MS-13 gang activities (as his mother had).

An IJ convened a second evidentiary hearing in 2018. Aguirre-Avendano's sister testified again, and his younger brother (who had since come to the United States) testified for the first time. The IJ eventually issued a written decision holding:

- Aguirre-Avendano's sister's testimony was not credible, given inconsistencies between her 2011 testimony and 2018 testimony;

- Aguirre-Avendano's brother's testimony was unreliable;

- Aguirre-Avendano's proposed social groups based solely on membership in his nuclear family are valid social groups for asylum

purposes, but he failed to prove that he had been persecuted, or likely would be persecuted, on account of family membership;

- Aguirre-Avendano's proposed social groups based on his relationship to nuclear family members who have filed police reports against the gang are not cognizable because they are not socially distinct—and, in any event, he failed to prove persecution, or likelihood of persecution, motivated by that relationship; and

- Aguirre-Avendano failed to prove that the Salvadoran government was unable or unwilling to oppose the MS-13 gang, or that it acquiesced in the gang's violence.

For all these reasons, the IJ denied asylum, withholding of removal, and CAT protection.

Aguirre-Avendano appealed to the BIA, which held that substantial evidence supported all the IJ's factual findings, and that those findings justified denial of relief. The BIA therefore dismissed the appeal.

This petition for review followed.

### III.    ANALYSIS

#### A.    Asylum

An asylum applicant must prove that he or she is a "refugee." 8 U.S.C. § 1158(b)(1). In this context, a "refugee" is a person unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion." *Id.* § 1101(a)(42)(A).  Aguirre-Avendano relied on the "particular

social group" prong.  As noted, he asserted: (1) membership in his nuclear family,

and (2) membership in a nuclear family, one of whose members had filed police

reports against the MS-13 gang.[2]

### 1.     Credibility

Aguirre-Avendano argues, in essence, that the IJ should have credited his

sister's and younger brother's testimony, and then the IJ would have been compelled

to conclude that the MS-13 gang persecuted Aguirre-Avendano on account of his

membership in one of his proposed social groups.  Thus, we address the credibility

challenge first.

### a.     *Aguirre-Avendano's Sister*

Aguirre-Avendano's sister, Raina, testified at both the 2011 and 2018

hearings.  She also submitted an affidavit ahead of the 2011 hearing.

The key points of Raina's affidavit were:

- MS-13 gang members first attacked her in 2001 because they knew her

  ex-husband was working in the United States and sending her money;

- in 2002–03, MS-13 gang members tried to recruit her brother Carlos

  (the petitioner here), and beat him savagely for refusing to join;

---

[2] Aguirre-Avendano broke each of these groups into two, with slight differences between the definition of each, for a total of four proposed social groups. Those differences are irrelevant for present purposes.

- Raina's and Carlos's mother reported the beating to the police and then started receiving threats and demands that they pay protection money of $50 per week;

- Carlos was again savagely beaten in 2006, at which point his parents sent him to the United States; and

- in 2008, MS-13 gang members murdered Raina's and Carlos's mother because she had reported them to the police, stopped paying the protection money, and refused to tell them where Carlos had gone.

Raina's testimony at the 2011 hearing was somewhat consistent with her affidavit, but three details changed:

- Carlos's troubles with MS-13 began in the year 2000 (not 2002);

- she was attacked in the year 2000 (not 2001); and

- she was attacked on account of Carlos's refusal to join the gang (not because they knew she was receiving money from her ex-husband).

Finally, at the 2018 hearing, Raina returned to the allegation in her affidavit that she had been attacked in 2001 (not 2000). But she added that her first attack had actually been a series of three attacks in 1997, and she was raped each time. She further testified that she had not provided that detail previously because she felt ashamed and embarrassed.

The IJ found he could not accept Raina's testimony due to its inconsistencies about the timing and number of the attacks, and about the gang members'

motivations. The BIA, in turn, held that the IJ had provided adequate reasons for this credibility determination.

The statute governing asylum sets the following standard for judging credibility:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii); *see also id.* § 1229a(c)(4)(C) (setting the same standard for removal proceedings generally). The agency's credibility findings, "like other findings of fact, are subject to the substantial evidence test." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

Aguirre-Avendano argues that the agency should have viewed his sister's testimony more sympathetically, but that is not enough to show "any reasonable adjudicator would be compelled to conclude" that his sister was credible, 8 U.S.C. § 1252(b)(4)(B). Because the agency's finding falls within the broad range of

7

acceptable findings on the evidence before it, we must accept Raina's lack of credibility as "conclusive." *Id.*

> b.     *Aguirre-Avendano's Younger Brother*

Aguirre-Avendano's younger brother, Jose, testified only at the 2018 hearing. He was sixteen years old at the time. He was young (four or five years old) when he saw gang members murder his mother. They were then living in San Salvador. But the gang began to demand money from his father, so he and his father moved around the country to try and stay away from them. Eventually, the gang found him (Jose) and attacked him, and then his father sent him to the United States.

The IJ found Jose's testimony "unreliable" and "largely incoherent." R. at 97. As examples, the IJ noted that Jose said he lived in five different places while trying to avoid the gangs, but could describe only three of them. The IJ also pointed out that Jose first said he never returned to San Salvador after his mother's murder, but later said that the gang attacked him in a San Salvador alleyway when he was twelve years old. The IJ acknowledged Jose's age and the trauma he experienced, but his testimony was nonetheless "unclear," so the IJ chose to "afford it little, if any, weight." *Id.* The BIA upheld this determination for the reasons given by the IJ.

Aguirre-Avendano argues that Jose's testimony was reliable, and any inconsistencies were not material. But the agency must consider inconsistencies "without regard to whether [they go] to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). In any event, the record does not compel a conclusion that

Jose's testimony was reliable.  Thus, we may not overturn the agency's decision to ignore it.

### 2.    Nexus Determination

As stated above, Aguirre-Avendano insists that *if* the agency had credited Raina's and Jose's testimony, *then* the IJ would have been compelled to conclude that MS-13 was persecuting him *because of* his membership in at least one of the family-based social groups he proposed.  Given the structure of this argument, we need not reach the latter issue because Aguirre-Avendano has not shown that the agency erred in its credibility decisions.

At the very end of this section of his brief, however, Aguirre-Avendano adds, "Alternatively, Petitioner argues that even excluding his family members' testimony, substantial evidence in the record shows that he was targeted due to his family membership, and that each member of his family was targeted for their family membership."  Pet'r's Opening Br. at 47.  But he does not develop this argument beyond that single sentence, so he waives the issue.  *See, e.g.*, *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ("[S]uch perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.").  We therefore uphold the agency's finding that Aguirre-Avendano did not prove he had been persecuted, or would likely be persecuted, because of his membership in the social groups he proposed.[3]

---

[3] Given this disposition, we need not reach Aguirre-Avendano's argument that the agency erred when it found two of his proposed social groups (based on family

### B.    Withholding of Removal

Aguirre-Avendano's withholding-of-removal argument depends entirely on his argument that the agency should have granted him asylum.  Because we uphold the agency's asylum ruling, we likewise uphold its ruling that withholding of removal is unavailable.

### C.    CAT Protection

Aguirre-Avendano may still qualify for CAT protection if he "is more likely than not to be tortured" upon return to El Salvador.  8 C.F.R. § 1208.17(a).  But such torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity."  *Id.* § 1208.18(a)(1).

Aguirre-Avendano claims that his own family's experience of reporting gang activity to the police and receiving no protection—indeed, those reports allegedly led to his mother's murder—provides substantial evidence that the Salvadoran government would acquiesce in MS-13's murderous intentions if he were sent back. But other evidence cuts against his argument.  The agency relied on State Department evidence showing that "[t]he Salvadoran government has implemented structures to combat gang violence and actively apprehend, prosecute, and incarcerate gang

---

membership plus a history of making reports to the police) lacked social distinction. The agency stated that Aguirre-Avendano's evidence failed to prove a connection between the persecution he experienced and his membership in any social group he proposed, including those social groups the agency rejected for lack of social distinction.  We also need not reach Aguirre-Avendano's challenge to the agency's finding about the Salvadoran government's willingness or ability to protect its citizens from persecution.  That issue is irrelevant if he cannot prove he was persecuted on account of a protected ground.

members who target members of the general population." R. at 104–05. Aguirre-Avendano offers no argument why, on this body of evidence, "any reasonable adjudicator would be compelled" to find acquiescence, 8 U.S.C. § 1252(b)(4)(B). Accordingly, we uphold the agency's acquiescence finding and, in turn, its denial of CAT protection.

## IV.    CONCLUSION

We deny the petition for review.

Entered for the Court

Gregory A. Phillips
Circuit Judge